## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

GERALD L. TROOIEN,                                    Civil No. 06-3197(JRT/FLN)

Plaintiff,

v.                                                    **MEMORANDUM OPINION
                                                        AND ORDER**

PETER MANSOUR and BARRY
ROITBLAT,

Defendants.

George G. Eck, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 54402; Alexander A. Baehr, **DORSEY & WHITNEY LLP**, 1420 Fifth Avenue, Suite 3400, Seattle, WA 98101-4010, for plaintiff.

Alan L. Kildow and Sonya R. Braunschweig, **DLA PIPER US LLP**, 90 South Seventh Street, Suite 5100, Minneapolis, MN 55402; Brian D. Buckley and Stellman Keehnel, **DLA PIPER US LLP**, 701 Fifth Avenue, Suite 7000, Seattle, Washington 98104; for defendant Mansour.

Wesley Edmunds, **GORDON EDMUNDS ELDER PLLC**, 1200 112th Avenue NE, Suite C110, Bellevue, WA 98004; Brian Melendez, **FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402; for defendant Roitblat.

Gerald Trooien brought this action against Peter Mansour and Barry Roitblat, two former executive officers of Sproqit Technologies, Inc. ("Sproqit"), alleging violations of Minnesota securities laws and negligent and fraudulent misrepresentation. On February 7, 2007, this Court granted defendants' motions to dismiss Trooien's complaint for failure to plead fraud with particularity, and granted Trooien's request for leave to

amend the complaint.  This case is now before the Court on defendants' partial motions to dismiss Trooien's first amended complaint.[1]  For the reasons discussed below, the Court grants in part and denies in part Mansour's motion, and grants Roitblat's motion.

## BACKGROUND

Trooien is a private investor and shareholder of Sproqit Technologies, Inc., a Washington-based corporation that develops mobile communications software. Defendants are former executive officers of Sproqit.  Mansour was Sproqit's President and Chief Executive Officer until March 2006.  Roitblat was Sproqit's Chief Technology Officer.  Trooien alleges that between 2003 and 2005 both defendants made material misrepresentations and failed to disclose material facts regarding Sproqit's financial health and business prospects.  Trooien claims that he invested over $7 million in Sproqit based on these alleged misrepresentations.

Trooien alleged in his original complaint that in 2003 and 2004 defendants forecasted extremely high revenues in a spreadsheet provided to him.  Trooien claimed that the forecasts were false because Sproqit's revenues for 2004 and 2005 "did not even approach" the forecasted revenue figures.  For example, the 2003 spreadsheet projected Sproqit's 2004 revenues to be $524,224, with revenues increasing to $8,339,360 in 2005. However, Sproqit's unaudited financial statements revealed that gross revenue in 2004 was $150,251.  Sproqit's gross revenue through the end of October 2005 was just $9,022.

---

[1] Trooien's amended complaint includes a new claim for breach of fiduciary duty. Defendants have not moved for dismissal of the breach of fiduciary duty claim, and the status of that claim is not affected by this Memorandum Opinion and Order.

Trooien alleges that Mansour stated in an October 2005 email to a Sproqit employee that "[w]e haven't brought in a single penny in revenue, yet, right? Basically, I now look like a fool in front of [Trooien] from whom we now need to be bridged."  (Pl.'s Compl. ¶ 13.)

In addition to representations regarding Sproqit's revenue projections, Trooien alleged that Mansour falsely represented that Sproqit was negotiating its potential acquisition by Microsoft and Google in order to induce Trooien to make additional investments in Sproqit.  Trooien also alleged that Mansour misrepresented the value of Sproqit's contract with a product manufacturer named Archos.  Finally, Trooien alleged that Roitblat knew that Mansour's representations were false but failed to disclose this information to Trooien.

Trooien claimed that defendants' conduct violated § 80A.01 of the Minnesota Securities Act ("MSA") and constituted common law fraudulent and negligent misrepresentation under Minnesota law.  On February 7, 2007, this Court granted defendants' motions to dismiss the complaint for failure to plead fraud with particularity under Rule 9(b).  *See* Fed. R. Civ. P. 9(b).  The Court found that the complaint failed to specify defendant Roitblat as having made particular misrepresentations to plaintiff, and that it merely imputed fraudulent conduct collectively to "defendants."  Because Trooien had not alleged facts establishing the existence of an independent duty, the Court also determined that the allegations of Roitblat's fraudulent omissions failed to state a claim.

With respect to Mansour, the Court concluded that the complaint failed to set forth particularized allegations showing that Mansour's representations were false when made. Specifically, the Court found that Trooien had failed to allege particular facts showing

that Mansour's representations regarding the financial projections, acquisition discussions, and the Archos contract were false when made. While the Court recognized the inherent difficulties in pleading fraud with particularity absent pre-trial discovery, the Court noted that conclusory allegations of fraud are insufficient under Rule 9(b). Accordingly, the Court granted defendants' motions to dismiss with respect to the MSA claims and the fraudulent and negligent misrepresentation claims. The Court further granted Trooien's request for leave to amend the complaint to assert his claims in accordance with Rule 9(b).

Trooien has now filed a first amended complaint that includes the same substantive allegations from the original complaint and sets forth additional details surrounding defendants' alleged misrepresentations. As with the original complaint, the allegations in the amended complaint fall generally into three categories of representations: representations regarding Sproqit's future revenue projections, representations regarding Microsoft acquisition discussions, and representations regarding the Archos contract.

According to the amended complaint, in 2003 and 2004 Mansour continually told Trooien that Sproqit was going to obtain significant business accounts, including accounts with Vodafone and Bell Canada, which would produce revenues and make Sproqit an attractive takeover target by a large technology company. Mansour represented that he was familiar with the processes by which Microsoft acquired companies because he had been employed at Microsoft, and told plaintiff that it "was an absolute fact that Sproqit would be acquired." (Amd. Compl. ¶ 12.) Mansour also

represented that Sproqit was going to sign a significant contract with Vodafone, allowing Sproqit to break even in 2004, and that there were "contracts in place" with Bell Mobility that would create substantial revenues for Sproqit.  Trooien alleges these statements were false because, among other things, it was never "a fact" that Sproqit would be acquired and there were no contracts in place with Bell Mobility.  Trooien also points to an email dated August 3, 2004, in which Roitblat wrote to Mansour that certain revenue projection numbers looked "rather ambitious" and "aggressive," and stated he was "doubtful" about certain figures.  Two days later, on August 5, 2004, detailed revenue projections were provided to Trooien.

With respect to the Microsoft acquisition discussions, the amended complaint alleges that both Mansour and Roitblat participated in conference calls with Trooien, that "misrepresentations were made" during these calls, and that Mansour took the lead on the calls.  Trooien alleges that Roitblat knew misrepresentations were made during the conference calls but failed to disclose the truth in violation of his fiduciary duties.  The amended complaint also quotes from a November 8, 2005 email from Mansour to Trooien stating that "[w]e are having breakfast to discuss next steps and acquisition. Todd [a Microsoft employee] already gave the green light."  (Amd. Compl. ¶ 19.)  In the same email, Mansour told Trooien "I am very good an [sic] maneuvering within Microsoft."  (*Id.*)  Trooien alleges that, in fact, Microsoft had never given a green light to do business with Sproqit, and that Mansour was in fact not very good at maneuvering within Microsoft.

Finally, the amended complaint contains additional allegations with respect to the Archos contract.  On September 26, 2005, Mansour wrote an email to Trooien stating "I'm hoping its enough [revenue] to bridge us to the Archos revenue which is to start in Jan-Feb. [2006]."  (Amd. Compl. ¶ 17.)  In an October 18, 2005 email from Mansour to Trooien, Mansour stated that "I refuse to let this thing die before I shop with Archos." (Amd. Compl. ¶ 22.)  Trooien also quotes from a November 1, 2005 email from Mansour to Trooien.  In that email, Mansour stated that "we have to fulfill the Archos contract." (Amd. Compl. ¶ 23.)  On November 8, 2005, Mansour wrote to Trooien, "I think another opportunity has popped up with Archos, so I need to make my way to Paris to see if I can get some more business from them."  (Amd. Compl. ¶ 24.)  Trooien alleges that these statements were false because the contract with Archos was illusory and Archos had no definitive obligations pursuant to a contract with Sproqit.  Trooien also quotes from a November 23, 2005 email from an Archos representative which states, "[w]e have not a clear idea of whether we will need Sproqit."  (Amd. Compl. ¶ 33.)

It is alleged that Roitblat was aware of these misrepresentations but failed to disclose them to Trooien, in violation of his fiduciary duties.  It is also alleged that Mansour and Roitblat "had been representing to Trooien since at least April 2005 that the Archos contract would be a significant source of revenue."  (Amd. Compl. ¶ 31.)

As with his original complaint, Trooien alleges in Count 1 of the amended complaint that defendants' statements were misrepresentations of material fact in

violation of section 80A.68 of the MSA.[2]   Minn. Stat § 80A.68 (2007).   He also claims that Roitblat failed to disclose material facts necessary to correct prior misleading statements, in violation of the MSA.   Count 2 of Trooien's amended complaint alleges that defendants' statements and omissions constitute negligent and fraudulent misrepresentation under Minnesota common law.   Count 3 alleges that defendants violated fiduciary duties owed to plaintiff under Washington law.

## ANALYSIS

### I.   STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party.   *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).   A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle plaintiff to relief.   *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).   However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).   A plaintiff must state "a claim to relief that is plausible on its face."   *Id*. at 1974.

---

[2] Minnesota statute § 80A.01 was amended and renumbered as § 80A.68, effective August 1, 2007.

## II.    MINNESOTA SECURITIES ACT CLAIM (COUNT 1)

The Minnesota Securities Act makes it unlawful for a person, in connection with the offer, sale, or purchase of a security, "to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make a statement made . . . not misleading." Minn. Stat. § 80A.68(2). The elements of a securities fraud claim under § 80A.68 are "essentially the same" as a federal securities fraud claim under Rule 10b-5. *Erickson v. Horing*, 2001 WL 1640142, at *7 (D. Minn. 2001). "Both statutes require a misrepresentation with scienter in connection with a transaction in a security on which the plaintiff justifiably relied to his detriment." *Id.* As this Court determined in its prior Memorandum Opinion and Order, Trooien's MSA claim is subject to the particularity requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b) (providing that "all averments of fraud . . . shall be stated with particularity").

Under Rule 9(b), a plaintiff must allege the time, place, and contents of the false representations, and identify the person making misrepresentations and what was obtained or given up thereby. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997). In the securities fraud context, Rule 9(b) requires that the pleading set forth facts explaining why it is claimed that the representations were known by each of the defendants to be untrue or misleading at the time they were made. *In re Buffets, Inc. Sec. Litig.*, 906 F. Supp. 1293, 1300 (D. Minn. 1995). In reviewing Trooien's allegations, however, the Court is mindful that the issue here is "not whether plaintiff[] will

ultimately prevail at trial, but rather whether [he is] entitled to proceed with [his] claims." *In re Digi Intern., Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1095 (D. Minn. 1998).

## A.  Financial Projections

Trooien's first set of allegations concern representations of Sproqit's future revenue projections.  Mansour argues once again that the MSA claim fails because it is based on statements about the *future*, and because nothing in the amended complaint demonstrates that Mansour knew the revenue predictions were false at the time they were made.[3]  Under federal securities laws, the scienter required for a fraud claim depends on the kind of statement made.  For statements of present or historical fact, the required scienter is actual knowledge or recklessness.  *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001).  Under the federal "safe harbor" rule, forward-looking statements about

---

[3] Mansour also argues that the Supreme Court's recent decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007), imposes a heightened pleading requirement on Trooien's amended complaint. In *Tellabs*, the Court held that to plead a "strong inference" of scienter, the inference must be "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 2504-05. Trooien responds that the *Tellabs* decision applies only to federal securities law claims arising within the Private Securities Litigation Reform Act, and not to state securities fraud claims under the MSA.

The Court agrees that the Reform Act is generally inapplicable to claims arising under state law. *See* 15 U.S.C. § 78u-4(a)(1) (stating that the Act applies to actions brought under the chapter in which it is contained). Nonetheless, courts in this district have consistently looked to the federal securities laws in interpreting the MSA. *See, e.g.*, *First Presbyterian Church of Mankato v. John G. Kinnard & Co.*, 881 F. Supp. 441, 445 (D. Minn. 1995) (denying motion to dismiss MSA claim on grounds that plaintiff had alleged a "strong inference" of scienter with respect to an accompanying federal rule 10b-5 claim); *Minneapolis Employees Ret. Fund v. Allison-Williams Co.*, 519 N.W.2d 176, 179 (Minn. 1994) ("The Minnesota Securities Act is patterned after federal law. The Act is to be construed so as 'to coordinate the interpretation of [the MSA] with the related federal regulation."). Here, even applying the heightened pleading requirement of *Tellabs*, the Court finds that Trooien has stated a MSA claim with respect to certain of Mansour's alleged future revenue projections. The Court therefore need not decide whether the *Tellabs* standard should apply to securities claims under the MSA.

the future require a showing that defendant had *actual* knowledge that the prediction was false.  17 C.F.R. § 240.3b-6(b)(1); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 320 (8th Cir. 1997).  That a prediction of future revenue never comes to be does not mean that the prediction was false when made, which would amount to pleading "fraud by hindsight."  *See In re Nash Finch Co.*, 502 F. Supp. 2d 861, 882 (D. Minn. 2007).  However, predictions about future revenue may be actionable if a plaintiff alleges that the forward-looking statements were made without a reasonable basis.  *In re NationsMart Corp. Sec. Litig.*, 130 F.3d at 320; *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 513 (7th Cir. 1989).

Here, while many of the alleged misrepresentations concern predictions about Sproqit's future revenue, the amended complaint now includes particular allegations that Mansour misrepresented then-existing material facts.  Specifically, Trooien alleges that Mansour stated it "was an absolute fact that Sproqit would be acquired," and that Mansour represented there were "contracts in place" with Bell Mobility that would generate substantial revenues for Sproqit.  Although these representations have a predictive component, they are also representations of then-existing material facts: that Sproqit's acquisition was 100% certain at the time, and that Sproqit already had contracts in place with Bell Mobility.  Trooien has alleged that these statements were false when made because it was not a fact that Sproqit would be acquired, and because there were no contracts in place with Bell Mobility, as represented by Mansour.  In addition, the August 3, 2004 email from Roitblat to Mansour described "the numbers" as "rather ambitious" and "aggressive," and noted that Roitblat was "doubtful" about certain

figures.  This email was sent just two days before Mansour presented revenue projection figures to Trooien.

The Court finds that these allegations, when taken together and in context, are sufficient to remove the taint of "fraud by hindsight" from Trooien's original complaint. Contrary to Mansour's assertion, the amended complaint does not seek to establish fraud based simply on the fact that predictions of future revenue never materialized.  Rather, the amended complaint now includes particular allegations that Mansour misrepresented then-existing material facts.  Trooien alleges that Mansour knew the statements were false because the contracts were not in place with Bell Mobility, and because it was not an absolute fact that Sproqit would be acquired.  The Court finds these two statements sufficiently particularized to create a strong inference of scienter that is at least as compelling as an opposing inference of non-fraudulent intent.

Further, these two statements, particularly when considered in combination with the August 3, 2004 email,[4] support a strong inference that Mansour lacked a reasonable basis for any predictions of future revenue that are based on the Bell Mobility contracts or the Microsoft acquisition.  Therefore, contrary to Mansour's contention, Trooien need not show that Mansour had *actual* knowledge that these specific revenue predictions were false at the time they were made.  *See In re NationsMart Corp. Sec. Litig.*, 130 F.3d at

---

[4] Mansour argues that Trooien has not sufficiently alleged that the revenue projections provided on August 5 were the same as the numbers reviewed by Roitblat pursuant to the August 3 email.  Mansour further notes that the initial email sought input from Roitblat regarding the projections.  The Court finds that, while the email may not be sufficient by itself to create a strong inference of scienter, it provides context for Mansour's revenue projections and strengthens the inference of scienter with respect to predictions based on the Bell Mobility contracts and the Microsoft acquisition.

320.  Based on Trooien's particularized allegations that Mansour knew that statements about Bell Mobility contracts or the Microsoft acquisition were false, the Court finds a sufficiently strong inference that Mansour's predictions of future revenue were made with actual knowledge of their falsity or with reckless disregard for their truth.

The Court emphasizes that the allegations are sufficient only with respect to future revenue predictions that are based specifically on 1) the Bell Mobility contracts and 2) the Microsoft acquisition.  With respect to the remaining revenue predictions, the Court finds that Trooien has failed to allege with particularity that Mansour had actual knowledge of the falsity of those predictions,[5] or that Mansour lacked a reasonable basis for those predictions.  Accordingly, the Court denies Mansour's motion to dismiss with respect to (1) Mansour's statement that it "was an absolute fact that Sproqit would be acquired," (2) Mansour's statement that there were "contracts in place" with Bell Mobility that would generate substantial revenues for Sproqit, and (3) Mansour's predictions of future revenue that are based on either (1) or (2).

Roitblat argues that the allegations of revenue forecasts in the amended complaint do not cure the initial pleading deficiencies under Rule 9(b).  This Court previously found that the allegations imputing fraudulent activity collectively to "defendants" were not sufficiently particularized to satisfy Rule 9(b).  Here, the amended complaint alleges once again that "defendants forecasted extremely high revenues for Sproqit knowing these facts to be false."  (Amd. Compl. ¶ 9.)  That allegation is not sufficiently particularized

---

[5] The Court makes these and the remaining findings of non-fraudulent intent applying either the "strong inference" standard, *see, e.g.*, *John G. Kinnard & Co.*, 881 F. Supp. at 445, or the heightened inference requirement under *Tellabs, Inc.*, 127 S. Ct. at 2504-05.

under Rule 9(b) to allow Trooien to proceed on his fraud claim against Roitblat. *See Parnes*, 122 F.3d at 550 (finding similar allegations insufficient where defendants are "left to guess which controlling shareholders were responsible for [the] alleged fraud"). The amended complaint is devoid of any additional allegations that specifically identify Roitblat as having made representations to Trooien regarding the revenue projections.

As to the alleged fraudulent omissions, the Court notes that Trooien has cured a prior pleading deficiency to the extent the amended complaint now alleges that both Roitblat and Mansour owed fiduciary duties to him. *See Exeter Bancorp., Inc. v. Kemper Sec. Grp., Inc.*, 58 F.3d 1306, 1314 (8th Cir. 1995) (stating that omissions or nondisclosures may constitute fraud only where the defendant has an independent duty to disclose).   As with the initial complaint, however, Trooien has failed to make particularized allegations that Roitblat knew that Mansour made various misrepresentations to Trooien and failed to correct those misrepresentations.   Trooien points to the August 3, 2004 email from Roitblat to Mansour, in which Roitblat wrote that the projected revenue numbers looked "ambitious" and "aggressive."   However, it has not been alleged that Roitblat knew that the financial projections that Mansour ultimately provided to Trooien were false.   Indeed, review of the email chain[6] shows that Roitblat was simply responding to a request from Mansour for preliminary feedback on the revenue numbers.

---

[6] Because the August 3, 2004 email was incorporated into the pleadings, the Court may examine the full text of that email consistent with its review of a Rule 12(b)(6) motion to dismiss. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).

The Court finds that Trooien's allegations of Roitblat's fraudulent omissions are not sufficiently particularized under Rule 9(b) to survive a motion for dismissal. The Court therefore grants Roitblat's motion to dismiss the complaint with respect to the future revenue projections.

### B.  Microsoft Acquisition Discussions

Trooien alleges Mansour falsely represented that Sproqit was engaged in ongoing acquisition *discussions* with Microsoft and other companies. He alleges that both Mansour and Roitblat participated in conference calls with him, that "misrepresentations were made" during these calls, and that Mansour took the lead on the calls. As with the initial complaint, the amended complaint also quotes an email dated November 8, 2005, from Mansour to Trooien regarding the Microsoft acquisition discussions. In the email, Mansour writes "[w]e are having breakfast to discuss next steps and acquisition. Todd already gave the green light." (Amd. Compl. ¶ 19.) The email also states that Mansour was "very good at maneuvering with Microsoft." (*Id.*) Trooien alleges these statements were false when made because there was never a "green light" at Microsoft to do business with Sproqit, there was never any budget for Microsoft to do business with Sproqit, and Mansour was not in fact very good at maneuvering within Microsoft.

The Court agrees with defendants that the alleged statements regarding Microsoft acquisition discussions are not actionable. Trooien's amended complaint contains no new allegations regarding Sproqit's discussions with Microsoft, but merely amplifies his conclusion that these statements were false. The allegation that "misrepresentations were

made" during conference calls is entirely devoid of the kind of particularity required under Rule 9(b).  Further, Trooien has failed to allege particular facts showing that Mansour knew his statements regarding discussions with Microsoft were false, or that he made those statements with reckless disregard for the truth.  Instead, the amended complaint relies on conclusory allegations that these representations were false.  Such allegations are insufficient under Rule 9(b).  *See Comm'l Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) ("[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.").

The Court grants defendants' motions to dismiss the complaint with respect to allegations regarding the Microsoft acquisition discussions.

### C. Archos Contract

Trooien alleges that defendants made false representations regarding a contract with a French company named Archos.  The amended complaint quotes a September 26, 2005 email from Mansour to Trooien in which Mansour stated, "I'm hoping its enough [revenue] to bridge us to the Archos revenue which is to start in Jan-Feb. [2006]."  (Amd. Compl. ¶ 17.)  Mansour later wrote, "I refuse to let this thing die before I ship with Archos."  (Amd. Compl. ¶ 22.)  Trooien quotes a November 1, 2005 email from Mansour to Trooien, in which Mansour stated "we have to fulfill the Archos contract."  (Amd. Compl. ¶ 23.)  On November 8, 2005, Mansour sent another email to Trooien, stating "I think another opportunity has popped up with Archos, so I need to make my way to Paris to see if I can get some more business from them."  (Amd. Compl. ¶ 24.)  It is alleged

that these statements were false because there was never a contract between Archos and Sproqit. Trooien quotes from a November 23, 2005 email from an Archos representative which states, "[w]e have not a clear idea of whether we will need Sproqit." (Amd. Compl. ¶ 33.)

As with the Microsoft acquisition discussions, the Court finds the amended complaint lacks sufficiently particular allegations of fraud under Rule 9(b). Many of the alleged statements related to the Archos contract are predictive in nature – reflecting Mansour's hope that the Archos contract would be profitable – and, as discussed above, such statements require a showing that Mansour actually knew these statements were false at the time they were made. *In re NationsMart Corp. Sec. Litig.*, 130 F.3d at 320. However, short of the conclusory allegations that these statements were false, Trooien has not alleged any particularized facts that would support a strong inference that Mansour knew these statements were false at the time they were made. The fact that an Archos representative stated that he did not have a clear idea of whether they would need Sproqit in the future does not make Mansour's statements about possible opportunities with Archos false. In fact, the November 23, 2005 email suggests that Archos may have a need, albeit an uncertain one, for Sproqit. The Court therefore grants Mansour's motion to dismiss the MSA claim with respect to allegations regarding the Archos contract.

For the same reasons, the allegations against Roitblat also fail to satisfy Rule 9(b). The amended complaint essentially concludes, without particulars, that Roitblat was aware of Mansour's alleged misrepresentations and failed to disclose them to Trooien.

Even if such conclusory allegations were sufficient to state a securities fraud claim, however, as discussed above, the allegations with respect to Mansour are themselves insufficient under Rule 9(b). The amended complaint also includes an allegation that Roitblat "had been representing to Trooien since at least April 2005 that the Archos contract would be a significant source of revenue." (Amd. Compl. ¶ 31.) However, Trooien has failed to identify either the specific contents of such representations or the specific time such representations were made. As such, the Court finds that the allegations against Roitblat regarding statements and omissions related to the Archos contract are not sufficiently particularized under Rule 9(b). The Court will grant Roitblat's motion to dismiss with respect to representations about the Archos contract.

In summary, the Court denies Mansour's motion to dismiss the MSA claim (Count 1) with respect to (1) Mansour's statement that "was an absolute fact that Sproqit would be acquired," (2) Mansour's statement that there were "contracts in place" with Bell Mobility that would generate substantial revenues for Sproqit, and (3) Mansour's predictions of future revenue that are based on either (1) or (2). The Court grants Mansour's motion to dismiss Count 1 in all other respects. The Court further grants Roitblat's motion to dismiss the MSA claim against him.

## III. NEGLIGENT AND FRAUDULENT MISREPRESENTATION CLAIM (COUNT 2)

Count 2 of the amended complaint alleges that defendants' statements and omissions constitute negligent and fraudulent misrepresentation under Minnesota law. As this Court noted in its prior Memorandum Opinion and Order, the fraudulent

misrepresentation claim, like the MSA claim, is subject to the particularity requirements of Rule 9(b).  Fed. R. Civ. P. 9(b) (particularity requirement applies to all averments of fraud).    Trooien's negligent misrepresentation claim is similarly subject to the particularity requirements of Rule 9(b).  *In re Digi Intern.,* 6 F. Supp. 2d at 1104; *Juster Steel v. Carlson Cos.*, 366 N.W.2d 616, 618 (Minn. Ct. App. 1985).

To the extent the common law claims are subject to the same particularity requirements under Rule 9(b), the claim for fraudulent and negligent misrepresentation suffers from the same deficiencies discussed in the context of the MSA claim.  For the reasons discussed above, the Court finds that Trooien has adequately pleaded negligent and fraudulent misrepresentation against defendant Mansour as to (1) Mansour's statement that "was an absolute fact that Sproqit would be acquired," (2) Mansour's statement that there were "contracts in place" with Bell Mobility that would generate substantial revenues for Sproqit, and (3) Mansour's predictions of future revenue that are based on either (1) or (2).  Mansour's motion to dismiss is therefore denied with respect to these particular statements.

In all other respects, the Court finds that Trooien has failed to allege negligent or fraudulent misrepresentation with sufficient particularity as to Mansour.  As with the MSA claim, the negligent and fraudulent misrepresentation claim is premised largely on conclusory allegations that Mansour knew his statements were false, or that he acted in reckless disregard of their truth or falsity.  Trooien's claim is similarly deficient with respect to misrepresentations or omissions by Roitblat.  As discussed above, such conclusory allegations are insufficient to satisfy the particularity requirements of Rule

9(b).  Accordingly, the Court grants in part Mansour's motion to dismiss the negligent and fraudulent misrepresentation claim (Count 2).  The Court grants Roitblat's motion to dismiss in its entirety with respect to Count 2.

Finally, the Court notes that Trooien has now had two opportunities to plead his fraud claims against defendants with sufficient particularity.  The Court is not persuaded that granting leave to amend the amended complaint at this time would cure the pleading deficiencies.  *See In re Digi Intern.*, 6 F. Supp. 2d at 1104 (stating that the Court has discretion under Federal Rule 15(a) to permit amendments, and that an amendment "need not be granted where it would be futile").  Accordingly, the Court does not intend to grant any further requests from Trooien for leave to amend his complaint to cure the deficiencies identified in this Memorandum Opinion and Order.

## ORDER

Based on the foregoing records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant Mansour's Partial Motion to Dismiss the Amended Complaint [Docket No. 50] is **GRANTED in part** and **DENIED in part**.  The motion is **DENIED** as to (1) Mansour's statement that it "was an absolute fact that Sproqit would be acquired," (2) Mansour's statement that there were "contracts in place" with Bell Mobility that would generate substantial revenues for Sproqit, and (3) Mansour's predictions of future revenue that are based on either (1) or (2).  The motion is

**GRANTED** in all other respects, and the remaining portions of Counts 1 and 2 of plaintiff's amended complaint are **DISMISSED with prejudice**.

2.    Defendant Roitblat's Partial Motion to Dismiss First Amended Complaint [Docket No. 56] is **GRANTED**.  Counts 1 and 2 of plaintiff's amended complaint are **DISMISSED with prejudice** as to defendant Roitblat.


DATED:    May 23, 2008                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge